## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **CIENA CORPORATION** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO.  2:05 CV 14** |
| | § | |
| **NORTEL NETWORKS INC.,** | § | |
| **NORTEL NETWORKS CORP.** | § | |
| **NORTEL NETWORKS LIMITED** | § | |
| | § | |
| **Defendants** | § | |

## MEMORANDUM OPINION AND ORDER[1]

Before the Court is the Motion for Preliminary Injunction to Enforce Forum Selection Agreement, and the Supplement thereto, filed by Defendants, Nortel Networks Inc., Nortel Networks Limited, and Nortel Networks Corporation (collectively "Nortel") (Docket Nos. 16 and 24). Nortel's motion seeks to enjoin Plaintiff, Ciena Corporation ("Ciena"), from further pursuing or participating in the International Trade Commission ("ITC") action commenced by Ciena against Nortel and Flextronics International Ltd. and Flextronics Telecom Systems Ltd. (collectively "Flextronics"). Nortel's motion also requests the Court require Ciena to withdraw its Complaint against Nortel and Flextronics before the ITC. Having considered the parties' written submissions and oral arguments, the Court **GRANTS** Nortel's motion for preliminary injunction.

## BACKGROUND

On January 17, 2003, Nortel and Ciena settled a multi-forum patent case between them. To

---

[1]This opinion constitutes the Court's findings of fact and conclusions of law. Any finding found to a conclusion is adopted as such and any conclusion found to be a finding is adopted as such.

1

document their settlement, Ciena and Nortel entered into a Confidential Settlement Agreement and

Release ("Settlement Agreement").  The Settlement Agreement is governed by California law.  The

Settlement Agreement did not resolve all the parties' outstanding patent disputes, but provided for

a two-year standstill during which time neither would file an action, suit, or proceeding for patent

infringement against the other ("the Two-Year Standstill") to allow them the opportunity to negotiate

a cross license resolving their remaining disputes.  The parties agreed that after the Two-Year

Standstill expired, actions for patent infringement between them would be brought in a single forum:

the United States District Court for the Eastern District of Texas, Marshall Division.

The Two-Year Standstill and forum selection clause are contained in Section 4 of the

Settlement Agreement, which provides in pertinent part:

> 4.  <u>Two-Year Covenant Not to Sue</u> . . .
>
> (a)      For a period commencing on the Effective Date and continuing for two years thereafter (referred to for convenience as the "Two-Year Period"), the parties agree:
>
> (i)      it will neither bring nor cause to be brought any **action, suit, or proceeding** against the other or any of its Affiliates based upon or arising out of any claim, liability or demand alleging that, in the case of Nortel, any CIENA Product infringes any Nortel Patent, and, in the case of CIENA, any Nortel product infringes any CIENA Patent;
>
> . . . .
>
> (b)      The two-year covenant not to sue described in this Section 4 is solely an agreement not to bring an **action or proceeding** of the type set forth in paragraph 4(a) in violation of the terms hereof and is not a release or discharge of liability or damages of any kind. . . .
>
> (c)      After the expiration of such Two-Year Period, in the event either Party or any Affiliate of a Party (referred to for convenience as the "plaintiff") brings an **action** for patent infringement against the other (referred to for convenience as the "defendant") or against any of the defendant's Affiliates, then both the plaintiff and the defendant, on behalf of themselves and each of their Affiliates, agrees to bring such **action** only in, and irrevocably consents to the exclusive personal jurisdiction of, the United States District Court, Eastern District of Texas, Marshall Division.
>
> . . . .
>
> (e)      This Settlement Agreement constitutes a full and complete defense to,

and may be used to obtain an injunction against, any **action, suit, claim or other proceeding** of any type set forth in this Section 4 (Two Year Covenant not to Sue) which may be prosecuted, initiated or attempted in violation of the terms hereof.

(emphasis added). In Section 8.4, the parties addressed the effect of a breach of the Settlement Agreement:

> 8.4  Breach.  With the exception of the obligations expressly conditioned upon the performance of those obligations described in Sections 7 (Obligation to Negotiate Patent Cross License), 8.2 (Nortel Conditions) or 8.3 (CIENA Conditions) by the other Party, respectively, nothing herein shall be construed as relieving a Party or any of its Affiliates of its obligations to perform as required herein.

On January 17, 2005, when the Two-Year Standstill expired, Ciena filed this action for patent infringement in the Marshall Division, consistent with the Settlement Agreement's forum selection clause. Ciena's Original Complaint alleged that Nortel infringes six of Ciena's patents. Ciena has since amended its complaint—dropping one patent and adding two additional ones—and now asserts a total of seven patents against Nortel in this case.

On February 25, 2005, Ciena filed a second action against Nortel with the ITC in Washington, D.C. (the "ITC Complaint"). In the ITC Complaint, Ciena asserted that certain Nortel long-haul and metro optical networking products infringe two of Ciena's patents, neither of which Ciena currently asserts in the present action. Ciena requested the ITC initiate an investigation pursuant to Section 337 of the Tariff Act of 1930 concerning Nortel's alleged infringement and issue an order prohibiting the importation of infringing optical networking products.

On March 14, 2005, Nortel filed with this Court its Answer and Counterclaims to Ciena's Second Amended Complaint. Among other claims and defenses, Nortel asserted that Ciena breached the Settlement Agreement's forum selection clause by filing the ITC Complaint. On March 14,

2005, Nortel also filed the present motion, seeking a preliminary injunction enjoining Ciena from pursuing or participating in the ITC action and requiring Ciena to withdraw its ITC Complaint against Nortel. The same day, Ciena amended the ITC Complaint to add Flextronics as a respondent, alleging that Flextronics and Nortel had entered into an agreement whereby Flextronics provides manufacturing services for Nortel and manufactures the accused infringing products for importation into the United States and/or sells the accused infringing products to Nortel for importation and sale in the United States.

On March 25, 2005, Nortel filed a Supplement to its Motion for Preliminary Injunction, requesting the Court to enjoin and restrain Ciena under the forum selection clause from participating in and further pursuing its ITC action against Nortel and Flextronics. Nortel also requested that the Court order Ciena to withdraw its ITC Complaint both as to Nortel and Flextronics.

## APPLICABLE LAW

<u>Contract Interpretation</u>

Contract interpretation is a question of state law. *Tex. Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000). The Settlement Agreement is governed by California law. Settlement Agreement § 10.3. The parties' mutual intent at the time they formed the contract governs the contract's interpretation. CAL. CIV. CODE § 1636; *Tessera*, 231 F.3d at 1329. Unless the parties used words in their technical sense, the words used should be "understood in their ordinary and popular sense, rather than according to their strict legal meaning." CAL. CIV. CODE § 1644. When the parties use technical words, those technical words should be "interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." CAL. CIV. CODE § 1645.

4

<u>Preliminary Injunction Standards</u>

"The basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero Barcelo*, 456 U.S. 305, 312 (1982). Federal Circuit law governs the issue of whether to grant the preliminary injunction because it involves a procedural matter arising from substantive issues that are unique to the Federal Circuit's jurisdiction. *Tessera*, 231 F.3d at 1328. To establish entitlement to a preliminary injunction, a moving party must demonstrate: 1) a reasonable likelihood of success on the merits, 2) irreparable harm, 3) balance of hardships in its favor, and 4) public interest in favor of the injunction. *Tessera*, 231 F.3d at 1329 (citing *Chrysler Motor Corp. v. Auto Body Panels, Inc.*, 908 F.2d 951, 952 (Fed Cir. 1990)).

**ITC ACTION AGAINST NORTEL**

<u>Reasonable likelihood of success on the merits</u>

> *a. The forum selection clause's applicability to ITC proceedings*

The Supreme Court has held that a "forum [selection] clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Supreme Court based this ruling on the strong public policy favoring enforcement of agreed-upon forum selection clauses in commercial transactions. *Id.; see also Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997) (holding that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances"). California, whose law governs the Settlement Agreement, also recognizes a strong public policy in upholding forum selection clauses. *See Smith, Valentino*

*& Smith, Inc. v. Super. Ct.*, 551 P.2d 1206, 1209 (Cal. 1976).[2]

Nortel and Ciena agreed that, after the Two-Year Standstill expired on January 17, 2005, any "action for patent infringement" against the other would be brought only in the United States District Court, Eastern District of Texas, Marshall Division.  The primary crux of the parties' dispute is whether "action for patent infringement" applies to the proceedings in the ITC.

Nortel, who brings this motion, argues that "action" encompasses ITC proceedings.  To support its position, Nortel cites various cases and treatises that refer to ITC proceedings as "actions."  Nortel also contends that the parties intended to resolve all future conflicts in a single forum through the forum selection clause; therefore, the parties must have intended "actions" to include ITC proceedings.

Ciena argues that the parties did not intend "actions" to include ITC proceedings.  Ciena points out that while the parties used "action, suit, or proceeding" in the Two-Year Standstill provision, they used only "actions" in the forum selection clause.  According to Ciena, this demonstrates that the parties did not intend the forum selection clause to be as broad as the Two-Year Standstill.  Ciena argues that the cases using "action" to describe ITC proceedings were not defining the term and directs the Court to cases and commentaries that describe disputes before the ITC as "proceedings."  Ciena also asserts that many federal statutes and regulations refer to disputes in the ITC as "proceedings," but refer to disputes in district court as "actions."  Finally, Ciena argues that Nortel's interpretation produces the absurd result of an implied cross-license for the parties'

---

[2] Ciena argues that the standard applicable to waiver, i.e., clear and convincing evidence, is applicable here. The Court disagrees; the issue is enforcement of a contractual forum selection clause and not intentional relinquishment of a known right.  Yet, even if the Court were to apply the clear and convincing evidence standard asserted by Ciena,  Nortel has met its burden for injunctive relief.

foreign patents because the parties cannot litigate those patents in the Eastern District of Texas.

Sophisticated business entities, such as Ciena and Nortel, are charged with "adequate knowledge of the basic patent law actions and remedies available to litigants, including the available forum and venues." *Tessera*, 231 F.3d at 1329-30. Thus, when they negotiated the Settlement Agreement, both parties had constructive knowledge that they could dispute infringement before the ITC or before a district court.

At the time Ciena and Nortel negotiated the Settlement Agreement, the Federal Circuit Court had decided *Tessera*, in which the court had to determine whether "litigation," as used in a licensing agreement's forum selection clause, encompassed actions before the ITC. *Id*. at 1325. The court determined that litigation did include ITC proceedings. Because the ITC is not located in California, the parties intended to exclude the ITC as an available forum when they agreed to bring all "litigation" California. *Id*. at 1331. In reaching this conclusion, the court frequently referred to Section 337 ITC investigations as an "action[s]." *Id.* at 1330, 1331, 1332.

In addition to *Tessera*, other Federal Circuit opinions refer to Section 337 ITC investigations as "actions." *See, e.g.*, *Jazz Photo Corp. v. United States Int'l Nat'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001); *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1562 (Fed. Cir. 1996). In addition, ITC opinions refer to ITC investigations as "actions." *See, e.g., In the Matter of Certain Hardware Logic Emulation Sys. & Component Thereof*, Inv. No. 337-TA-383, 1996 ITC LEXIS 445 at *5 (ITC Sept. 11, 1996); *In the Matter of Certain Condensing, Parts Thereof & Prods. Containing Same, Including Air Conditioners for Autos.*, Inv. No. 337-TA-334, 1997 ITC LEXIS 262, at *34 (ITC Sept. 10, 1997). At least one treatise refers to Section 337 investigations as "actions." DONALD K. DUVALL, UNFAIR COMPETITION AND THE ITC: ACTIONS

BEFORE THE INTERNATIONAL TRADE COMMISSION UNDER SECTION 337 OF THE TARIFF ACT OF 1930.

Ciena cites *SSIH Equipment S.A., v. United States Int'l Nat'l Trade Comm'n*, 718 F.3d 365 (Fed. Cir. 1983), which Ciena claims is binding precedent.  Ciena contends *SSIH* holds that "a proceeding before the Commission is not a civil action."  *See id.* at 371.  This misapplies the court's finding in *SSIH*.  In *SSIH*, the Federal Circuit was determining a statutory amendment's applicability to ITC proceedings.  *Id*.  The amendment stated it applied to "civil actions."  *Id*.  The court found "civil action" was intended to be construed to not include ITC proceedings.  *Id*.  Contrary to Ciena's contention, *SSIH* is not binding precedent on this Court because the interpretation issues are different.  In *SSIH*, the court was interpreting Congress's intent in using "civil action" in a statute. *Id*.  This Court must determine the parties' intent in using "action" in their private Settlement Agreement.  *See Tessera*, 231 F.3d at 1329 ("[T]he mutual intention of the parties at the time the contract is formed governs interpretation.") (quoting *AIU Ins. Co. v. Super. Ct.*, 799 P.2d 1253, 1264 (1990)).  While *SSIH* may be one of the many cases that shaped the parties' understanding of "action['s]" meaning, it is certainly not controlling or even directly on point.

Although Ciena argues that the parties' use of "action, suit, or proceeding" in the Two-Year Standstill provision and "actions" in the forum selection clause indicates the parties intended the provisions to have different scopes, it is clear the parties used the words interchangeably when the entire Settlement Agreement is examined.  In Section 4(a), the parties agreed they would not bring "any *action, suit, or proceeding*" against one another for two years.  (emphasis added).  Section 4(b) states, "The two-year covenant not to sue described in this Section 4 is solely an agreement not to bring an *action or proceeding* of the type set forth in paragraph 4(a) . . . ." (emphasis added).  Under Ciena's interpretation that "action" has a different meaning from "suit" or "proceeding," Section

8

4(b), which describes the Two-Year Standstill as applying to an "action or proceeding," would limit Section 4(a), which states the standstill applies to any "action, suit, or proceeding."  Additionally, because the forum selection clause only applies to "actions," under Ciena's interpretation, a party could bring a "suit" for patent infringement anywhere.  This is surely not what the parties intended. Further, in setting forth injunctive relief as a remedy for violation of the Settlement Agreement, Section 5 inserts the word "claim" into the action, suit, proceeding language: "This Settlement Agreement constitutes a full and complete defense to, and may be used to obtain an injunction against any *action, suit, claim, or other proceeding* of any type, which may be prosecuted, initiated or attempted in violation of the terms hereof. . . ."  (emphasis added).[3]

Ciena offers no definitions that coherently differentiate the terms action, suit, claim, and proceeding as they are used throughout the Settlement Agreement.  Nor are these terms defined in the Settlement Agreement.  Technical words are "interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." CAL. CIV. CODE § 1645.  While these terms may have technical distinctions, these distinctions are often ignored even by those in the legal profession, as demonstrated in the sources cited above.  *See, e.g., Tessera*, 231 F.3d at 1330, 1331, 1332.  Thus, as used in the Settlement Agreement, "actions" includes disputes before the ITC.

Ciena argues this interpretation produces the absurd result of an implied cross licence between the parties on all of their foreign patents.  The Two-Year Standstill provision applies to

_____

[3] Section 5 also allows for attorneys' fees "incurred in defending against any *suit, action or claim* brought or attempted in violation of the terms of this Settlement Agreement."  (emphasis added).  Under Ciena's interpretation, although an injunction is available against any action, suit, claim, or other proceeding, attorneys' fees would only be available if defending a suit, action, or claim but not if defending "proceedings."  This may support the argument that disputes before the ITC are "proceedings," but it does not aid in clarifying the meaning of "action."

9

"Ciena Patent[s]" and "Nortel Patent[s]."  The Settlement Agreement defines "Ciena Patent(s)" and "Nortel Patent(s)" to include foreign and domestic patents that the parties had rights in on the Settlement Agreement's effective date or were acquired during the Two-Year Standstill.  The forum selection clause does not use these defined terms, but instead uses the phrase "action for patent infringement against the other."  If the forum selection  clause applies to "Ciena Patent(s)" and "Nortel Patent(s)," as Ciena's argument supposes, it would be inapplicable to any patents either party acquires after the Two-Year Standstill expired.  Under this interpretation, either party could bring a patent infringement suit in any forum on any patent either party acquires today, entirely defeating the parties' intent to consolidate their patent litigation in a single forum.  Further, because the parties did not use the defined terms, the Court logically infers the parties did not intend to imply the defined terms' meanings in that provision; if they had, the parties would have used the defined terms.  Accordingly, Ciena's argument that this interpretation produces an absurd cross licence on the parties' foreign patents lacks merit.[4]  For all these reasons, Nortel is reasonably likely to prevail in proving Ciena breached the forum selection clause.

### b. Ciena's defenses to the forum selection clause

Ciena puts forth several reasons for why Nortel should be precluded from asserting its rights under the forum selection clause.  Ciena argues that Nortel did not negotiate with Ciena in good faith during the Two-Year Standstill, and therefore failed to satisfy a condition precedent to enforce the forum selection clause.  According to Ciena, Nortel's unclean hands should prevent Nortel from obtaining equitable relief.

---

[4]  Whether the forum selection clause applies to the parties' foreign patents is not before the Court, and the Court will not speculate on the clause's effect on litigation involving foreign patents.

Nortel presented a valid explanation for why it did not participate in the licensing negotiations.  Ciena does not contest Nortel's claim that Ciena insisted on having a third-party advisor attend the parties' first negotiation.  Nortel requested the third party execute a non-disclosure agreement that would have created an ethical wall preventing the third party's employees who receive Nortel's confidential information from representing Nortel's competitors in future engagements.  The third party refused to agree to Nortel's requests, and Ciena refused to meet with Nortel without the third party present.  As a result, the parties did not meet to negotiate a cross license.

These facts do not demonstrate Nortel's bad faith.  Ciena argues that Nortel's request was unreasonable because its one-sided nature did not place any confidentiality burdens on Nortel.  But only Nortel, not the third party, was risking its confidential information with a competitor.  Because the third party's confidential information was not vulnerable, the one-sided confidentiality agreement was reasonable and does not impugn Nortel's good faith.  Additionally, under Section 8.4 of the Settlement Agreement, good faith negotiation is not a condition precedent to operation of the forum selection clause.

Ciena also argues that Nortel failed to comply with the Settlement Agreement's thirty-day notice and cure provision.  This argument also lacks merit.  Compliance with the notice and cure provision, especially in light of the need for expedited relief, would have been futile and is therefore excused under California law.  *See Van Gammeren v. City of Fresno*, 124 P.2d 621, 623 (Cal. Dist. Ct. App. 1942) ("The law does not require useless acts from litigants as prerequisites to seeking relief from the courts."); *Norcen Energy Res. v. Pac. Gas & Elec. Co.*, No. C-94-0911-VRW, 1995 U.S. Dist. LEXIS 21943, at *28-29 (N.D. Cal. Nov. 4, 1995) (applying California law and denying

11

motion to dismiss alleging that counter claimant failed to provide required notice under contract because such notice would have been futile); *see also* CAL. CIV. CODE § 3532 ("The law neither does nor requires idle acts.").  Alternatively, Nortel did give Ciena notice, at the latest, on March 14, 2005, by filing its preliminary  injunction motion. The hearing on that motion was held thirty days later.  Ciena did not avail itself of the intervening opportunity to cure by withdrawing its ITC Complaint.  Thus, the contractual provision was complied with prior to entry of this Preliminary Injunction.

Based on the foregoing, Nortel is likely to overcome Ciena's arguments that Nortel is estopped from enforcing the forum selection clause.  Therefore, Nortel is reasonably likely to prevail on its argument that Ciena breached the forum selection clause by filing the ITC action.

Substantial threat of irreparable injury

Nortel has established that it will be irreparably harmed if the ITC action proceeds.  Nortel will have to defend itself simultaneously in the ITC and the District Court.  If Nortel is forced to fight on two fronts, it will suffer inconvenience, disruption of its business, loss of good will, and financial business hardship from the duplicative actions.  Nortel's key employees will be required to testify not once, but twice, in hearings and trial.  This disruption, as well as other disruptions established by Nortel, will cause irreparable harm, as they cannot be compensated with money damages.  Further, Nortel will be deprived of its bargained-for forum—an Article III judge's court and jury in the United States District Court for the Eastern District of Texas.  *See Tex. Instruments Inc. v. Tessera, Inc.*, No. C-00-2114, slip op. at 5-7 (N.D. Cal. March 6, 2001) (finding substantial threat of irreparable injury in similar circumstances).

Balance of Hardships

The balance of hardships tips in favor of Nortel.  In Section 4(e), Nortel and Ciena agreed to the entry of an injunction in the event either party violated Section 4's terms.  Although the Court does not treat this agreement as conclusive, it is nonetheless entitled to substantial weight.  *See id.* at 6 (finding that given the likelihood Tessera had no right bring its ITC action, Tessera' speculative hardship of slower relief in district court was of little weight); *cf. Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (upholding a permanent injunction in an employment contract where the parties had stipulated in the contract that a breach of a non-compete provision would cause irreparable injury).

The injunction will not work a material hardship to Ciena, as, for all practical purposes,  this Court can grant Ciena any relief it could have obtained in the ITC.  *See Tessera*, 231 F.3d at 1330. An injunction will not cause Ciena undue hardship or deny Ciena access to the only available forum. Ciena may seek relief for the alleged infringement in this Court, as it has chosen to do for several other patents.  If Ciena is able to prove Nortel's infringement, this Court can fashion an injunctive remedy that will allow Ciena much the same relief it could obtain before the ITC.  Besides also awarding damages, this Court can enjoin Nortel from making, using, selling, offering for sale, or importing devices that are proved to infringe.  *See Tessera*, 231 F.3d at 1330; *NTP, Inc. v. Research in Motion, Ltd.*, 392 F.3d 1336, 1344 (Fed. Cir. 2004) (describing procedural history that included the district court issuing an injunction against "further manufacture, use, importation, and/or sale" of accused products).  While the United States Customs Service will not automatically seize any infringing imports upon this Court's judgment, Ciena can take the additional step of requesting they do so.  *See Tessera*, 231 F.3d at 1330.  In the particular circumstances of this case, any alleged differences in the scope of relief available from the Court and the ITC are immaterial.  Further, the

parties bargained away any additional relief the ITC could provide when they agreed the Eastern District of Texas would be the exclusive venue for future patent infringement actions.

Public interest

Public interest will be served by the injunction because public policy favors the enforcement of forum selection clauses.  "Enforcement of valid forum selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J. concurring).  California public policy also favors enforcement of forum selection clauses.  *Smith, Valentino & Smith, Inc.*, 551 P.2d at 1209.

Conclusion as to Nortel

After considering Nortel's likelihood of success on the merits, the substantial threat of irreparable injury to Nortel, the balance of hardships between the parties, and the public interest, the preliminary injunction as to Ciena's participation in the ITC proceeding against Nortel is warranted. Accordingly, the Court will issue a preliminary injunction in a separate order.

**ITC ACTION AGAINST FLEXTRONICS**

Nortel moves the Court to include Ciena's participation in the ITC action as to Flextronics in the preliminary injunction.  In June 2004, Nortel entered into an Asset Purchase Agreement with Flextronics and sold its optical product manufacturing unit, including its St. Laurent Facility in Canada, to Flextronics.  Before the sale, Nortel manufactured the accused products in the ITC action at this facility.  Flextronics purchased Nortel's production equipment, inventory, accounts receivable, prepaid expenses, goodwill, and other assets.  Nortel transferred to Flextronics all of Nortel's

14

production activities carried on at the St. Laurent Facility, including product assembly, integration and testing, and product repair activities.  Flextronics offered employment to the employees who previously worked for Nortel in the St. Laurent facility.  After the purchase, Flextronics continued to manufacture the same products for Nortel that Nortel had previously manufactured for itself.  The Court addresses the same four factors in determining whether to include the Flextronics action in the preliminary injunction.

Reasonable likelihood of success on the merits

Four independent grounds exist for finding that Nortel is reasonably likely to succeed  in proving the forum selection clause applies to Flextronics: (1) the "closely related" doctrine, (2) the "customer suit" doctrine, (3) the first sentence of Section 10.6 of the Settlement Agreement, which applies the terms of the Settlement Agreement to successors, and (4) the second sentence of Section 10.6, which applies the terms of the Settlement Agreement to contract manufacturers.

*a. "Closely-related" basis*

Under California law, a forum selection clause applies to a range of parties who are closely related to the signatories.  *Bugna v. Fike,* 80 Cal. App. 4th 229, 233 (Cal. Ct. App. 2000); *Lu v. Dryclean U.S.A., Inc.*, 11 Cal. App. 4th 1490, 1494 (Cal. Ct. App. 1992).  A third party is closely related and subject to a forum selection clause if: (1) it agreed to be bound by the terms of the agreement, (2) the contracting parties intended the agreement to bind the third party, or (3) there is "a defined and intertwining business relationship with a contracting party." *Bugna,* 80 Cal. App. 4th at 233; *see also Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998).  As the Court will discuss, Ciena and Nortel intended Flextronics receive the Settlement Agreement's benefits.  Additionally, as already partially described, Flextronics and Nortel have a defined and

intertwined business relationship.  Flextronics exclusively manufactures for Nortel the accused products, which Nortel designs.  Their intertwined relationship is also shown in the premise of Flextronics's liability to Ciena, which is entirely predicated on Nortel's infringement.

### b. "Customer-suit" basis

The customer-suit doctrine also supports Nortel's reasonable likelihood of success.  The customer-suit exception allows a court to stay a first-filed suit against customers when the manufacturer brings a later-filed declaratory judgment action.  *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990); *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977). Underlying the customer-suit doctrine is the preference that infringement determinations should be made in suits involving the true defendant in the plaintiff's suit, i.e., the party that controls the product's design, rather than in suits involving secondary parties, i.e. customers.  *See Codex*, 553 F.2d at 737-38.  Typically, the doctrine is applied to give priority to a manufacturer's later-filed declaratory judgment action over the plaintiff's infringement suit against the manufacturer's customers.  *Id*.  Although the doctrine has been articulated in terms of customers, the same rationale is applicable here.  *See* CAL. CIV. CODE § 3511 ("Where the reason is the same, the rule should be the same"); *SAES Getters, S.P.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1093 (S.D. Cal. 2002) (referring to the doctrine in terms of "secondary parties" rather than limiting it to customers and manufacturers).  Nortel designs the products accused in the ITC action and, if the Court were to order Ciena to withdraw its ITC action against Nortel, but not Flextronics, "either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products," Nortel will be under immense pressure to intervene in the ITC action to protect its accused products. *See Codex*, 553 F.2d at 737-38.  Additionally, Nortel may be contractually obligated to defend

16

Flextronics.[5]  Like customers in the typical application of the customer-suit exception, Flextronics

is merely a secondary party.  *See  SAES Getters, S.P.A.*, 219 F. Supp. 2d at 1093.

Ciena argues the customer-suit exception is inapplicable to Flextronics because its conditions

have not been met.  Specifically, Ciena argues that: (1) Ciena cannot obtain the relief it seeks in the

ITC from this Court, (2) Flextronics has not appeared in this action, (3) Flextronics has not agreed

to by bound by the results in this case, and (4) this Court cannot provide relief in as timely a matter

as the ITC.

Ciena's concerns are more academic than realistic.  If the ITC finds the products Flextronics

manufactures infringes Ciena's patents, it can issue an order prohibiting the importation of those

products.  *See SSIH*, 718 F.2d at 370.  Pursuant to their manufacturing agreement, when Flextronics

internationally ships Nortel's products, title passes to Nortel immediately prior to importation into

the receiving country.  Further, Flextronics manufactures the allegedly infringing products solely for

Nortel and is contractually prohibited from selling them to others.    Therefore, any injunction this

Court issues against Nortel would achieve the same effect as an ITC order against importation,

rendering Ciena's first, second, and third concerns moot.  As to Ciena's last concern, while the ITC

may reach a final decision on infringement before this Court does, with trial set in June of 2006, this

Court's judgment is not far behind.  The few months of sooner enforcement through the ITC are

outweighed by the effect this Court's judgment could have on the patent's validity.  *See SSIH*, 718

F.2d at 369 (describing that the ITC modified its exclusion order to comport with a district court's

finding that the patents were invalid).   Accordingly, the reasons to enjoin the action against

---

[5]  The manufacturing agreement between Nortel and Flextronics obligates Nortel to "indemnify and defend Flextronics against any claim or action brought against Flextronics by a third party" if the infringement claim is based on Flextronics' manufacture of Nortel products.

Flextronics under the customer suit basis far outweigh Ciena's arguments against doing so.

_c. Successor basis_

The parties agreed that the terms of the Settlement Agreement "inure[s] to the benefit of (in accordance with the terms hereof) and shall bind the successors, assigns, representatives, beneficiaries and attorney(ies) of the parties, and each of them." Settlement Agreement § 10.6. Although "successor" is not a defined term, the parties described a successor-in-interest in Section 10.5 as one to whom "either Party . . . from time to time assigns, transfers, sells or exchanges . . . all or substantially all of the assets of any business unit." Nortel transferred its optical product manufacturing unit to Flextronics. In the transaction, Flextronics acquired Nortel's Canadian facility, production equipment, inventory, accounts receivable, prepaid expenses, goodwill, and other assets. Flextronics acquired all of Nortel's production activities including product assembly, integration and testing, and product repair activities carried on at the St. Laurent Facility. Accordingly, Flextronics is a successor under Section 10.6 as that term is described in Section 10.5.

Flextronics is also a successor as that term is used in California law. Under California law, a successor is "[o]ne that succeeds or follows; one who takes the place that another has left, and sustains the _like part or character_; . . . ." _Perez v. 222 Sutter Street Partners_, 222 Cal. App. 3d 938, (Cal. Ct. App. 1990) (quoting from Black's Law Dictionary, 5th ed.).[6] Flextronics clearly meets the California definition of successor as "one that succeeds or follows" as to Nortel's Canadian manufacturing plant. _See generally Knudsen Dairy Prods. Co. v. State Bd. of Equalization_, 12 Cal. App. 3d 47, 53 (Cal. Ct. App. 1970) ("It is clear that Dairy was the successor [as that term is used

---

[6] Ciena argues that Flextronics does not meet California's stricter definition of successor-in-interest, but that argument is irrelevant because Section 10.6 of the Settlement Agreement used the term "successors."

18

in the California Tax code] to Pix in that Dairy acquired the major operating assets of Pix, and continued to operate the business.  It is hard to imagine a more complete take-over of a going business than what occurred here."); *cf. Kaminski v. W. MacArthur Co.*, 175 Cal. App. 3d 445, 453-54 (Cal. Ct. App. 1985) (holding that a successor of a corporation could be held liable under successor liability theory when successor had acquired considerable assets of predecessor, including customer records, good will, equipment, office furniture, and hundreds of thousands of dollars worth of inventory, and successor retained experienced personnel, customer lists, and reputation of predecessor).  Nortel's argument is especially persuasive since it is Flextronics's takeover of Nortel's manufacturing role that led to Flextronics's alleged infringement.  Because Flextronics is the successor to Nortel's optical manufacturing business unit at which the products accused in the ITC action are manufactured, Flextronics is entitled to the benefit of the forum selection clause.

> *d. Contract manufacture basis*

Under Section 10.6 of the Settlement Agreement, Flextronics is also a third party beneficiary of the forum selection clause.  The second sentence of Section 10.6 states, "Each entity identified in Sections 3 (Release) and 4 (Two-Year Covenant [N]ot to Sue) is an intended third party beneficiary of this Settlement Agreement."  Section 4(a)(iii) includes "Nortel Manufacturers" as parties that were not to be sued during the Two-Year Standstill.  "Nortel Manufacturers" is defined in Section 1.13 as "any and all contract manufacturers, developers, assemblers, suppliers, and independent contractors who have written agreements in place with Nortel or any of its Affiliates to manufacture and sell Nortel products to Nortel, Nortel Affiliates, and/or Nortel's and/or its Affiliates' Customers."  Flextronics is a contract manufacturer to Nortel and fits within the term "Nortel Manufacturer" as the parties defined it.  Because Nortel Manufacturers are identified in

19

Section 4 and there is no dispute that Flextronics is a Nortel Manufacturer, Flextronics is therefore an intended third party beneficiary of the forum selection clause.

Ciena's argument that the Two-Year Standstill benefits contract manufacturers but the forum selection clause does not is without merit, since the parties clearly intended the forum selection clause to apply to contract manufacturers.  If the forum selection clause did not apply to contract manufacturers and customers, the parties could easily circumvent the forum selection clause by suing the other's customers and contract manufacturers in any venue. This would pressure the other party—as the primary party in interest—to intervene, eviscerating the forum selection clause.  *See Codex*, 553 F.2d at 737-38.  Sophisticated parties, such as these, would never have intended the language of Section 10.6 to render their agreed forum selection clause meaningless.

Substantial threat of irreparable injury

Because the ITC action against Nortel and Flextronics is based on Nortel products, and Nortel would be forced to defend Flextronics before the ITC even if Nortel were no longer a party to the action, the analysis of this factor is the same as that discussed regarding the ITC action against Nortel.

Balance of hardships

Ciena argues that issuing the preliminary injunction as to the ITC action against Flextronics will prevent Ciena from receiving relief it could not receive from this Court.  Specifically, Ciena argues that a judgment from this Court that Nortel infringes Ciena's patents would not stop Flextronics from importing infringing products on Nortel's behalf because the injunction would apply only to the parties and not the products.  For reasons already discussed, this argument also lacks merit.  Contractually, Flextronics may only manufacture the allegedly infringing products for

20

Nortel.  Further, according to the contract between Nortel and Flextronics, title to the products passes from Flextronics to Nortel immediately prior to importation.  Thus, this Court could issue an order that sufficiently enjoins the importation of Nortel's infringing products.  Accordingly, this factor weighs in favor of Nortel.

Public policy

For the same reasons the public policy factor favors the preliminary injunction as to the ITC action against Nortel, it also favors issuing the injunction as to the ITC action against Flextronics.

Conclusion as to Flextronics

The preliminary injunction factors regarding Ciena's participation in the ITC action against Flextronics weigh in favor of issuing the preliminary injunction.  Accordingly, the Court will issue the appropriate order.

## CONCLUSION

For the reasons discussed above, the preliminary injunction factors favor preliminarily enjoining Ciena's participation in the ITC action as to both Nortel and Ciena.  Finding that a bond is necessary, the Court provides for one in the preliminary injunction.  The Court will enter a preliminary injunction in accordance with this Memorandum Opinion and Order.

**So ORDERED and SIGNED this 19th day of May, 2005.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**